Argued and submitted February 25, affirmed September 15, 2004

# STATE OF OREGON,
*Appellant,*

*v.*

# JEREMY ALEX WAYNE MCKENZIE,
*Respondent.*

## 016295FE; A118650

97 P3d 1242

Jonathan Fussner, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General.

Shawn Wiley, Deputy Public Defender, argued the cause for respondent. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Landau, Presiding Judge, and Armstrong and Brewer,* Judges.

ARMSTRONG, J.

---

* Brewer, J., *vice* Leeson, J. pro tempore.

## ARMSTRONG, J.

The state appeals from an order suppressing evidence that it sought to introduce in a prosecution of defendant for felony driving under the influence of intoxicants (DUII). ORS 813.010(5). The evidence that the trial court suppressed concerned a 1997 Nevada case in which defendant was convicted of DUII. The court concluded that the Nevada conviction failed to meet the Oregon constitutional standard for a conviction involving a waiver of counsel. The state argues that the court should have evaluated the validity of the Nevada conviction under Nevada or federal constitutional standards rather than Oregon's. The state maintains that, measured under those standards, defendant's waiver of counsel was valid and that evidence of the conviction should therefore be admissible. We affirm.

The relevant facts are undisputed. Defendant was indicted in 2001 in Jackson County, Oregon, on a charge of felony DUII. The relevant statute provides that

"[d]riving while under the influence of intoxicants is a Class C felony if the defendant has been convicted of driving while under the influence of intoxicants in violation of this section or its statutory counterpart in another jurisdiction at least three times in the 10 years prior to the date of the current offense * * *."

ORS 813.010(5).

The indictment alleged three predicate DUII convictions from Nevada. In a pretrial motion, defendant challenged the validity of the first of those convictions, which was entered in Washoe County, Nevada, in March 1997. He contended that the record developed by the state in prosecuting the Oregon charge failed to establish that he had made a knowing waiver of counsel before pleading no contest in the 1997 Nevada case.

Three documents were submitted as evidence of the Nevada conviction: a judgment; a signed waiver of rights form; and what appears to be a computer record containing, among other things, minutes of the court proceeding. The judgment, which orders a suspended sentence of 30 days'

imprisonment, makes no mention of defendant's plea or waiver of counsel. The waiver form, signed and initialed by defendant, indicates that a number of disclosures were made to defendant about various matters, including his right to confront and subpoena witnesses, his right against self-incrimination, and the possibility that "the State will use this and any other constitutionally valid prior conviction of this type of offense to enhance the penalty for any subsequent offense." Defendant initialed the following clauses in the form:

> "I understand I have the right to have an attorney represent me, and if I cannot afford an attorney the Court will appoint one, and I give up this right or I am represented by: [the words "PRO PER" are typed above a blank line]
>
> "* * * * *
>
> "I am voluntarily pleading [the word "guilty" is crossed out] / nolo contendere to the offense as stated in the first paragraph, without any promises of lenience or threats having been made."

The form does not make any mention of the relative dangers or disadvantages of proceeding without counsel. A space provided on the form for a defense attorney's signature was left blank.

The court minutes reflect that the same notices and waivers described on the waiver form were given orally. They also include a notation that "the Court found Defendant entered the plea knowingly, intelligently, voluntarily, with an understanding of the elements of the offenses and the consequences of the plea and accepted Defendant's plea." However, like the waiver form, the minutes make no reference to any discussion of the relative dangers or disadvantages of proceeding without counsel.

The Oregon court concluded that the records of the Nevada conviction "are not sufficient to show that Defendant made a knowing waiver of counsel as required by *State v. Jackson*, 172 Or App 414[, 19 P3d 925] (2001)," and therefore ruled that evidence of the Nevada conviction was inadmissible in the Oregon case. Relying on ORS 138.060(1)(c),[1] the state appeals from that order.

---

[1] ORS 138.060(1) provides, in part:

■  The requirements for a waiver of a criminal defendant's right under Article I, section 11, of the Oregon Constitution to be represented by counsel are well established. For a waiver of that right to be valid, it must be knowing and voluntary. *E.g., State v. Meyrick*, 313 Or 125, 132-33, 831 P2d 666 (1992). Before accepting a proposed waiver of counsel, an Oregon court must assure itself that the waiver is knowing and voluntary. In order for the court to have that assurance, it must be satisfied that the defendant understands the disadvantages or risks of self-representation. The preferred way for the court to satisfy itself on that point is for it to have a colloquy with the defendant on the record about the risks of self-representation. *Id.* at 133. Here, there is nothing in the record of the 1997 Nevada case that indicates that the Nevada court discussed with defendant the risks of self-representation or otherwise took steps to assure itself that defendant understood those risks. Without more, that record is insufficient to establish that defendant's waiver of his right to counsel met the Oregon constitutional standard for such a waiver.

The state argues, however, that the trial court erred in applying Oregon's constitutional standard to the Nevada case. The state relies on our decision in *State v. Graves*, 150 Or App 437, 947 P2d 209 (1997), *rev den*, 326 Or 507 (1998), as support for its position. In *Graves*, the defendant challenged the use of a federal military conviction in the calculation of his criminal history score on the ground that the conviction was obtained without affording him a right to a jury trial, which is a right that is guaranteed to criminal defendants by Article I, section 11, of the Oregon Constitution. We upheld the use of the military conviction, explaining that "the validity of an out-of-state conviction[ ] should be tested under the constitutional requirements of that jurisdiction *or* of the federal constitution." *Graves*, 150 Or App at 441 (emphasis in original). Accordingly, the state argues here that the trial court "should have tested the validity of the

―――――――――――――

"The state may take an appeal from the circuit court to the Court of Appeals from:

"* * * * *

"(c) An order made prior to trial suppressing evidence[.]"

1997 Nevada conviction under the requirements of the U.S. and Nevada constitutions."

Defendant disagrees. Relying on *State v. Davis*, 313 Or 246, 251-54, 834 P2d 1008 (1992), he contends that the court was correct to evaluate the validity of the Nevada conviction under Oregon constitutional standards. *Davis* involved a challenge to the state's use of evidence obtained by Mississippi police officers through conduct that, had it occurred in Oregon, would have violated Article I, section 9, of the Oregon Constitution. The Supreme Court reasoned:

> "If the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter *where* that evidence was obtained (in-state or out-of-state), or *what* governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution. Where that is true, the Oregon constitutional protections apply."

*Davis*, 313 Or at 254 (emphasis in original).

Defendant also attempts to distinguish *Graves*, suggesting that it applies only when convictions from other jurisdictions are used to calculate a criminal history score and not when they are used to prove an element of a crime. Alternatively, he asks us to agree with the concurrence in *Graves*, 150 Or App at 444-48 (Edmonds, J., concurring), and conclude that *Graves* applied an incorrect analysis and should be overruled.

We need not resolve the parties' dispute over which state's constitution applies in assessing the validity of defendant's waiver of counsel because we conclude, contrary to the state's argument, that both constitutions impose the same requirements. The state cites *Gallego v. State*, 117 Nev 348, 23 P3d 227 (2001), as support for its contention that the Nevada Constitution imposes a less rigorous standard for a court to apply in determining whether to accept a proposed waiver of counsel, so we begin our analysis with *Gallego*.

*Gallego* involved a defendant whose motion for self-representation had been denied. In considering the propriety of that denial, the Nevada Supreme Court explained:

> "A criminal defendant has the right to self-representation under the Sixth Amendment of the United States Constitution and article 1, section 8 of the Nevada Constitution. However, an accused who chooses self-representation must satisfy the court that his waiver of the right to counsel is knowing and voluntary. Such a choice can be competent and intelligent even though the accused lacks the skill and experience of a lawyer, but the record should establish that the accused was made aware of the dangers and disadvantages of self-representation."

*Id.* at 356, 23 P3d at 233 (footnotes omitted). The standard that the court identified for assessing whether a waiver of counsel is a knowing waiver is the same waiver standard that applies under the Oregon Constitution. *See, e.g., Jackson,* 172 Or App at 423 (explaining that a prior, uncounseled DUII conviction could not be used to support a later felony DUII charge unless the defendant was made aware of the risks and disadvantages of self-representation).

The state argues, however, that the standard articulated in *Gallego* does not necessarily apply to a waiver of counsel that precedes a guilty plea. It notes that the *Gallego* court cited *Faretta v. California,* 422 US 806, 95 S Ct 2525, 45 L Ed 2d 562 (1975), as support for the requirement that defendants be informed about the risks of self-representation. The state reasons that the citation to a United States Supreme Court case indicates an intention by the Nevada court to adopt the federal analysis on waiver of counsel. The state then cites *Patterson v. Illinois,* 487 US 285, 108 S Ct 2389, 101 L Ed 2d 261 (1988), in which the Supreme Court articulated a nuanced approach to self-representation that involved

> "asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage [to determine] the type of warnings and procedures that should be required before a waiver of [the right to counsel] will be recognized."

487 US at 298. Applying that analysis, the Court held in *Patterson* that full *Faretta* disclosures were not required for an uncounseled, post-indictment interrogation; a *Miranda* warning sufficed. The state argues that the pleading stage of a criminal case resembles the post-indictment interrogation stage more than it does the trial stage at issue in *Faretta*. The state reasons, therefore, that neither the Sixth Amendment nor Article I, section 8, of the Nevada Constitution requires full *Faretta* disclosures to support an uncounseled guilty plea.

There are several problems with the state's analysis. First, the *Gallego* court did not cite *Patterson*; it cited *Faretta*. Moreover, the rule enunciated in *Gallego* does not, like the rule in *Patterson*, differentiate between a defendant's self-representation rights at trial and her rights at the pleading stage. *Gallego* speaks only of "a criminal defendant" and "an accused who chooses self-representation." 117 Nev at 356, 23 P3d at 233.

Second, the rule enunciated in *Gallego* was not based solely on federal constitutional doctrine. In its discussion, the Nevada court explicitly cited both the federal constitution and Article I, section 8, of the Nevada Constitution. *Id.* The latter section provides that "in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person, and with counsel * * *." Nev Const, Art I, § 8. Nevada has routinely identified Article I, section 8, as a source of its self-representation doctrine. *Baker v. State*, 97 Nev 634, 637 P2d 1217, 1218 (1981), *overruled on other grounds by Lyons v. State*, 106 Nev 438, 445, 796 P2d 210, 214 (1990). The fact that Nevada self-representation doctrine has been influenced by federal doctrine does not mean that the state doctrine parallels every twist and turn of the evolving federal doctrine.

Finally, and most significantly, the general weight of Nevada law and jurisprudence, consistently with *Gallego*, weighs *against* the rule posited by the state. Nevada Supreme Court Rule 253 (2003), for instance, makes no distinction between the pleading phase and other phases of the criminal process, and it provides:

"1. Where a defendant appearing in district court chooses self representation, the court should make a specific, penetrating and comprehensive inquiry of the defendant to determine whether the defendant understands the consequences of his or her decision to proceed without counsel. * * *

"2. *The court should inform the defendant of some of the dangers, disadvantages and consequences of self representation*:

"(a)   Self representation is often unwise and a defendant may conduct a defense to his or her own detriment;

"(b)   A proper person defendant is responsible for knowing and complying with the same procedural rules as lawyers, and cannot expect help from the judge in complying with these procedural rules;

"(c)   A defendant proceeding in proper person will not be allowed to complain on appeal about the competency or effectiveness of his or her representation;

"(d)   The state will be represented by experienced professional counsel who will have the advantage of skill, training and ability;

"(e)   The proper person defendant is not entitled to special library privileges;

"(f)   A defendant unfamiliar with legal procedures may allow the prosecutor an advantage, may not make effective use of legal rights, and may make tactical decisions that produce unintended consequences; and

"(g)   The effectiveness of the defense may well be diminished by defendant's dual role as attorney and accused.

"3.   The court's canvass of the defendant may include questions in the following areas:

"* * * * *

"(h) *Defendant's understanding of the pleas and defenses which may be available*[.]"

(Emphasis added.) Thus, by its terms, the Nevada rule applies *at the pleading stage* as well as the trial stage. Furthermore, in *Davenport v. State*, 112 Nev 445, 477-78, 915

P2d 878, 880 (1996), the court explicitly rejected an argument that convictions obtained through uncounseled guilty pleas should be evaluated by a different standard than should convictions entered after an uncounseled trial when the convictions are collaterally attacked:

> "[I]n order to rely on a prior misdemeanor judgment of conviction for enhancement purposes, the state had the burden of proving either that the defendant was represented by counsel or validly waived that right * * *.

> "[I]t is clear that the primary focus of the analysis * * * is on whether the defendant was represented by counsel when convicted of a prior offense, regardless of whether that conviction was the result of a guilty plea or a trial."

(Internal quotation marks omitted.)

In summary, we conclude that the Nevada Constitution, like Oregon's, requires that an uncounseled guilty plea be preceded by a knowing waiver of counsel that is based on an awareness by the defendant of the risks of self-representation. Because the two states' standards are essentially identical, we reject the state's argument that the Oregon court applied an incorrect standard in evaluating the validity of defendant's waiver of counsel in the 1997 Nevada case.

■ As a final argument, the state contends that, in the absence of affirmative evidence that defendant was *not* aware of the risks and disadvantages of self-representation, the Oregon court should have *presumed* that the Nevada court regularly performed its official duty to ensure that defendant was aware of those risks. In support of its argument, the state relies on OEC 311(1)(j) and (x), which create evidentiary presumptions that "[o]fficial duty has been regularly performed" and that "[t]he law has been obeyed." The state did not make the argument about presumptions below, so it cannot raise it now. ORAP 5.45(3); *State v. Amaya*, 336 Or 616, 628-29, 89 P3d 1163 (2004).

Based on the foregoing, it follows that the court did not err in concluding that defendant's waiver of his right to counsel in the 1997 Nevada case was not a valid waiver and

that evidence of the 1997 conviction could not be admitted in the Oregon case.

Affirmed.